## PAINTER v. PENN MUT. LIFE INS. CO.

(District Court, S. D. Florida. March 24, 1923.)

1. **Cancellation of Instruments ⊚═37(6)—Bill to cancel release on life policy, on ground that release was procured by fraud, held sufficient.**

In suit to cancel release on life policy issued to complainant's husband, bill alleging that complainant was induced to execute release by false representations by defendant's agent that settlement of policies in other companies would be made in full, and that insured's vital organs, which had been removed and right to possession of which was then in litigation, would be returned, if complainant released policy issued by defendant, *held* sufficiently to allege fraud on motion to dismiss bill.

2. **Compromise and settlement ⊚═19(1)—Equity will not disturb settlement by parties, in absence of overreaching by one of them.**

Equity will not disturb settlement of differences by parties, in absence of overreaching by one of them.

3. **Dismissal and nonsuit ⊚═73 — On motion to dismiss bill, allegations of bill must be taken as true.**

On motion to dismiss bill, allegations of bill must be taken as true.

4. **Equity ⊚═65(2)—Beneficiary, executing release on life policy because of false representations by company's agent, held not in pari delicto in perpetration of fraud on other companies.**

Beneficiary of life policy, who was induced to execute release on policy issued by defendant by false representations that, if she executed release, policies issued by other companies would be settled in full under agreement between such companies, *held* not in pari delicto in perpetration of fraud on other companies, so as to preclude her from seeking aid of equity to cancel release.

5. **Equity ⊚═264—Allegations as to unauthorized removal of organs from body in bill to cancel release on life insurance policy for fraud immaterial, and stricken.**

In suit to cancel release on life policy executed by insured's widow, on ground release was procured by fraud, allegations of bill relating to unauthorized removal of certain organs from insured's body *held* immaterial, and will be stricken.

6. **Equity ⊚═264—Allegations in bill to cancel release for fraud as to what took place on visit of insurer's agent to insured's office held immaterial, and stricken.**

In suit to cancel release on life policy executed by insured's widow, on ground release was procured by fraud, allegations of bill as to what took place on first visit of insurer's agent to insured's office *held* immaterial, and will be stricken.

7. **Equity ⊚═264—Allegations of bill to cancel release on life policy for fraud held not impertinent, and not stricken.**

In suit to cancel release on life policy executed by insured's widow, on ground release was procured by fraud, allegations of bill relating to insured being Mason, and that complainant was induced to execute release by representations that agreement for settlement of policies in other companies in full had been brought about by certain Masons, *held* not impertinent, but tended to show that suspicions of complainant had been lulled because of her confidence in such fraternity, and allegations will not be stricken.

In Equity. Suit by Martha S. Painter against the Penn Mutual Life Insurance Company. On defendant's motions to dismiss bill and to strike certain portions thereof as immaterial and impertinent. Motion to dismiss denied. Motion to strike out certain portions of bill granted in part, and denied in part.

Stewart & Bly, of DeLand, Fla., for complainant.

W. M. Bostwick, Jr., of Jacksonville, Fla., for defendant.

CALL, District Judge. [1] The bill of complaint herein is brought for the purpose of canceling a certain release executed by the complainant on a certain policy on the life of her husband, issued by defendant on February 24, 1913, on the ground of fraud in procuring such release. After alleging the death of the insured, May 22, 1913, the bill alleges that the defendant had issued three policies on the life of Painter, one for $50,-000, one for $47,000, and one for $3,000. It then alleges:

That certain agents of defendant approached the complainant with an offer of settlement of all of these policies, and made certain representations, through which complainant was induced to execute the release on the $50,000 policy, which release is sought to be canceled in this suit. The representations, made by Thompson, that the writer of one of the policies was out of the city, and therefore Wm. Thompson was employed to make the proposition for settlement. That through the efforts of certain Masons an agreement had been brought about between all of the companies having policies on the life of Painter, except one or two, with reference to a plan for the settlement of all the policies. That Gill was one of the head men of the defendant, and had accomplished much in the arrangement with the other companies, and such agreement was in Gill's hands. That, well knowing the desire of complainant to gain possession of the vital organs of her husband, which had been shipped to Baltimore, the suit then pending in that city over the possession of said vital organs was controlled by defendant, and that such suit would be stopped by the defendant if the proposed settlement was consummated, and said vital organs would then be turned over to her possession. That if said proposition was accepted the other companies would pay in full the policies on the life of said Painter.

That writing, signed by said Thompson,

was delivered to complainant as follows: "This is to certify that I am fully informed that the settling of the policies of E. O. Painter with the Penn Mutual will result in the following companies paying in full: Mutual Life, New York Life, Union Central, and Equitable Life; there being a written agreement to this effect which I have read. W. Thompson." That said Thompson urged repeatedly a speedy decision, that the matter might be settled by noon of the day prior to the hearing of the suit in Baltimore over the possession of the vital organs of Painter. That Gill, an agent of defendant, over the telephone vouched for the veracity and reliability of said Thompson.

The settlement proposed, and which the complainant, relying upon believing the representations of Thompson, accepted, was that defendant would pay in full a policy for $3,-000, would return the cash premium of $1,-160 paid by Painter on another policy, and return certain premium notes given by Painter for premiums amounting to $2,331.20, and that oratrix and her daughter should execute releases of all the policies issued by the defendant on the life of Painter. This proposition was finally accepted, and the moneys paid by, and the premium notes surrendered by, the defendant, and the releases executed by complainant and her daughter. The bill then alleges that the companies mentioned would not pay said policies in full, but were defending the suits brought to enforce the payment of same; that the suit in Baltimore was not dismissed, but had been prosecuted to the Supreme Court of the United States, where it is still pending.

The prayer of the bill is for cancellation of the release, for an injunction, and for an accounting of what is due complainant on said policy. A motion to dismiss the bill was made by defendant on various grounds—want of equity; adequate remedy at law; facts alleged do not constitute fraud; the complainant was a party to the fraud, if any, on the other companies. There is also a motion to strike certain portions of the bill as immaterial and impertinent.

The motion to strike must be considered in the light that the representations alleged were made by the defendant's agents, that the complainant believed said representations to be true and, relying upon them, executed the release sought to be canceled, and that such representations were untrue and knowingly made for the purpose of inducing the complainant to enter into the settlement. If these untrue representations constitute a

fraud, then the motion to dismiss should be denied.

Boiled down, the facts alleged in the bill show that this defendant, having policies aggregating $100,000, sent its agent to the complainant and her daughter to effect a settlement of all these, and in order to do so took advantage of the known desire to recover possession of the vital organs of the complainant's husband, a suit about which was then pending in Baltimore, as well as the assurance that all other policies on the life of her husband would be paid in full, to induce her to execute the release in question, thus procuring the settlement of $100,000 of insurance for the payment of some $4,000 and the release of something under $3,000 of premium notes; the defendant being then in position to bring this about.

[2, 3] It does not seem to me that there can be two opinions on this matter. Of course, parties between whom differences exist may come together and settle such differences, and equity will not disturb such settlement, where there has been no overreaching by one of the parties; but in the instant case, if the allegations are true, and for this hearing they must be taken as true, the things most important to be done by the defendant on its part in the settlement reached were not done. It would be highly inequitable to allow it to retain the fruits of the acts of its agents.

[4] I do not think the contention that the complainant is in pari delicto in perpetration of a fraud on the other insurance companies is tenable. It was represented to her that the agreement had already been reached among the companies, and that the payment only awaited her acceptance of the offer of the defendant, and that this agreement had been brought about by intervention of Masons high in the councils of the order. Thus she cannot be said to come into equity with unclean hands.

[5] A motion is also made to strike out certain portions of the bill. The bill at great length alleges the unauthorized autopsy and removal of certain organs of the deceased and the shipment of same to Baltimore for examination. I am at a loss to understand what bearing these facts can have on the decision of fraud vol non upon which this suit is based. The motion to strike that portion of the bill will be granted.

[6] Nor do I see that the allegations contained on the seventh page of said bill, challenged by the motion of defendant, of what took place on the first visit of Thompson to the office of Okle C. Painter, can have any bearing upon the issues to be decided in this case. This motion will be granted.

[7] The motions to strike out those portions of the bill relating to the deceased being a Mason, etc., can scarcely be said to be impertinent. The fact that complainant's husband was a Mason, the confidence reposed in that fraternity, and the representations based thereon might have exercised, and probably did exercise, much influence in establishing a confidence in the representations of Thompson, and lulling to sleep any suspicions which might have existed in the minds of the two women.

These motions will be denied.